UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE  DIVISION

*(Electronically Filed)*

| | |
|---|---|
| Crimson Aero Corporation,<br>an Oklahoma corporation, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :     Case No. _ **3:09cv-558-H** ___ <br> : |
| Richard Autore<br>11302 Brentlinger Lane<br>Louisville, Kentucky  40291 | : <br> : <br> : <br> : |
| Serve: Stuart Pearlman (by agreement)<br>       Pearlman Law Office<br>       7982 New LaGrange Rd #6<br>       Louisville, Kentucky 40202 | :     **Crimson Aero Corporation's Complaint for**<br> :     **Damages** <br> : <br> : <br> : |
| Donald Autore<br>209 57th Street<br>Pittsburgh, Pennsylvania 15201 | : <br> : <br> : |
| Serve: Stuart Pearlman (by agreement)<br>       Pearlman Law Office<br>       7982 New LaGrange Rd #6<br>       Louisville, Kentucky 40202 | : <br> : <br> : <br> : |
| and | |
| Bruce Kepley<br>1727 Nole Drive<br>Jeffersonville, IN  47130-6165 | |
| Defendants | |

Plaintiff, Crimson Aero Corporation, an Oklahoma corporation ("Crimson"), for its cause of action against Defendants, Richard Autore, Donald Autore, and Bruce Kepley, alleges and states as follows.

### Nature of the Action

1. This is an action to recover damages from Richard Autore and Donald Autore (collectively, the "Autores") for breach of contract and from Bruce Kepley ("Kepley") for interference with a contract between Crimson and the Autores.

2. The facts will show that Crimson entered into a binding contract to purchase certain minority shares of stock in a Louisville corporation for $500,000.00, that the Autores have failed or refused to close on the sale of that stock and that Kepley improperly caused the Autores to breach their binding contract with Crimson.

### Jurisdiction and Venue

3. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

4. Crimson is a corporation duly incorporated and existing pursuant to the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma.

5. Defendant Rich Autore ("RAutore") is a citizen of the Commonwealth of Kentucky and a resident of Jefferson County.

6. Defendant Donald Autore ("DAutore") is a citizen of the State of Pennsylvania.

7. Defendant Bruce Kepley ("Kepley") is a citizen of the State of Indiana.

8. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a) because there exists diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue if proper pursuant to in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Background Facts

### *The Corporation known as A Technological Advantage, Inc.*

10. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

11. Founded in 1994 by Kepley, a company known as "A Technological Advantage, Inc." (hereinafter, "ATA") began as an information technology education corporation.

12. Due to the inability of Kepley to effectively manage and operate the institution, and the resulting loss of funds from operations, the company experienced critical cash flow issues and as a result, ATA was forced to issue and sell shares of common stock and eventually preferred stock to certain investors.

13. Subsequent to the sale of shares to the investors, Kepley was terminated from his position and has not been employed by ATA for a period in excess of three (3) years.

14. Kepley is a current member of the ATA Board of Directors by virtue of his ownership of stock in ATA. His role as a director, however, has substantially diminished due to his repeated confrontations with other Board members.

15. The day-to-day operations of ATA are handled by the ATA executive management team with input from several other members of the Board. Kepley is not part of this management team.

16. Several years ago, ATA began offering allied health classes such as dental and medical assisting, practical nursing and radiology assistance classes.

17. Under the guidance of new investors and leadership, ATA now offers classes to hundreds of students each year who obtain an excellent education and eventually enter employment in their chosen field of study. The excellence of the ATA programs now offered at the College is acknowledged by the many employers hiring ATA graduates in the Allied Health field.

18. ATA no longer offers fields of study relating to information technology.

### *The Autore Shares of Common Stock*

19. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

20. Defendants RAutore and DAutore own and/or control as a custodian certain shares of common stock (the "Common Stock") in ATA.

21. The shares of Common Stock owned or controlled by RAutore and DAutore are subject to the terms and conditions of certain Stock Purchase Agreements (each, an "SPA" and collectively, the "SPAs") and Restricted Stock Agreements (each an "RSA" and collectively, the "RSAs") executed by each of them and ATA.

22. The RSAs contain certain limitations and conditions of ownership requiring, among other things, that the shares subject to the same be conveyed back to ATA in the event of certain mandatory option events described therein.

23. Two of the mandatory option events in the RSA's relate to the resignation of Autore from his employment at ATA and/or his death/disability.

24. On or about February 12, 2009, RAutore tendered his resignation as Director of Finance to ATA.

25. Pursuant to the terms of the RSAs, RAutore's resignation triggered a mandatory option event under which ATA had the contractual right to acquire all of the shares of Common Stock subject to the RSAs owned by RAutore (the "Autore Shares") and Donald Autore (the "DAutore Shares") some of which shares were held in an Individual Retirement Account (the "Autore IRA").

26. Pursuant to the terms of the RSA buyback provisions, upon the occurrence of an option event, ATA immediately had the right to acquire the RAutore Shares and DAutore Shares at the then fair market value, defined as either: (i) the price at which another sale of Common Stock occurred within the previous six (6) months, if any, and/or (ii) the value assigned to such shares by the Board of Directors at their sole and complete discretion.

27. Payment Terms for the RAutore Shares and DAutore Shares is also prescribed in the RSAs. In the event ATA desired to acquire the shares upon an option event, ATA had the option of delivering a promissory note to RAutore and DAutore according to certain prescribed payment terms.

28. ATA did not exercise its option to purchase the stock.

### The Autore Sale of Stock

29. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

30.     Crimson makes investments in proprietary colleges and schools similar to ATA. Its principals have a combined experience in excess of thirty-nine (39) years in the industry.

31.     Crimson was made aware of the pending resignation of RAutore and the option event that certain shares of ATA Common Stock would be subject to pursuant to the terms of the RSA's.

32.     Based upon such information, Crimson conducted a market evaluation of the ATA enterprise and enlisted the assistance of several professional organizations familiar with and possessing an expertise in valuing companies similar to ATA. These included one of America's largest proprietary school CPA firms as well as one of the most respected business intermediaries/brokers in the field.

33.     Based upon such review, and consistent with the then existing market conditions, Crimson submitted an offer to acquire all the shares of Common Stock then owned by the Autores for $416,000.

34.     The Autores rejected this initial offer and, after substantial negotiation, the parties finally settled on a $500,000 sale price for the minority shares held by the Autores.

35.     On or about March 21, 2009, Crimson and Richard Autore executed a Letter of Intent to Acquire Equity (the "LOI").

36.     Pursuant to the terms of the LOI, RAutore and DAutore agreed to sell their 13.36 percent (88.5 shares) of outstanding common stock in ATA for a total price of $500,000.00 to Crimson.

37. Pursuant to Section 2(c)(ii) of the Restricted Stock Agreement, the Autores gave notice to the ATA Board of Directors of their intent to sell their stock to Crimson and allowed the Company the right to purchase the shares at the same price.

38. On April 17, 2009, ATA gave notice to the Autores that the Company waived its right to purchase the shares at the price agreed upon between the Autores and Crimson and allowed the Autores to complete the sale to Crimson.

39. According to the terms of the Restricted Stock Agreement, the Autores and Crimson had 90 days from the date the LOI was executed to close on the sale of stock. That deadline was June 28, 2009.

40. On or about April 15, 2009, Crimson executed a Stock Purchase Agreement and forwarded it to the Autores for execution.

41. Subsequently, the Autores had not executed the Stock Purchase Agreement; therefore, Crimson repeatedly sent them and their counsel correspondence requesting them to do so.

42. The Autores have informed Crimson that they do not believe the LOI is a valid and binding contract and that they wanted to renegotiate the deal.

43. As of the date of the filing of this Complaint, the Autores had not executed the Stock Purchase Agreement; thereby breaching their contract with Crimson.

*Kepley's Actions to Interfere*

44. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

45. Subsequent to ATA's notice to the Autores that ATA waived its right to purchase the stock and allowed the Autores to sell the stock to Crimson, Kepley repeatedly interfered with the sale by, inter alia, engaging in the following acts:

    a. Kepley called RAutore and strongly encouraged him not to sell the shares to Crimson;

    b. Kepley told RAutore that Crimson was taking advantage of the Autore family;

    c. Kepley told RAutore that ATA was taking advantage of the Autore family;

    d. Kepley told RAutore and others that Crimson would destroy ATA, fire its employees and terminate its President;

    e. Without any basis in fact and without conducting any investigation, Kepley told RAutore and the Board of Directors that Autore was selling at an unfair price and that Crimson had improperly manipulated the valuation numbers;

    f. Kepley told RAutore and other board members that he would purchase 51 percent of the stock for an exhorbitant and unrealistic price if he could obtain enough subscriptions; and

    g. Kepley used Crimson's confidential information regarding the valuation of ATA for his own benefit and in his attempt to interfere with Crimson's purchase of the stock.

46. As a result of Kepley's actions, the Autores have breached their contract with Crimson.

## CAUSES OF ACTION

### Breach of Conract
### (Autores)

47. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

48. Based on the allegations tendered above, the Autores are liable to Crimson for breach of contract in an amount to be determined by a jury at trial.

### Breach of Contract – Good Faith and Fair Dealing
### (Autores)

49. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

50. Based on the allegations tendered above, the Autores are liable to Crimson for breach of contract in that they breached the covenant of good faith and fair dealing that is implied in every contract.

### Intentional Interference with Contractual Relations/
### Tortious Interference with Contractual Relations
### (Bruce Kepley)

51. Crimson incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

52. Kepley knew that a contract existed between Crimson and the Autores to sell 88.5 shares of stock for $500,000.00.

53. Kepley intended to cause the Autores to breach their contract.

54. Kepley's conduct caused the breach.

55. The breach resulted in damages to Crimson.

56. Kepley did not have any privilege or justification to excuse his conduct.

57. Kepley is liable to Crimson for intentional interference with contractual relations and/or tortious interference with contractual relations in an amount to be determined by a jury at trial.

**WHEREFORE,** Crimson Aero Corporation requests the following relief:

1. A trial by jury on all issues so triable;

2. Compensatory damages;

3. Punitive Damages as against Kepley;

4. Its costs and a reasonable attorneys' fee; and

5. All other relief to which it might be entitled under the law.

Respectfully submitted,
FROST BROWN TODD LLC


/s/ Bart L. Greenwald
Bart L. Greenwald
Nathan Berger
400 West Market Street, 32nd Floor
Louisville, Kentucky  40202-3363
Telephone:  (502) 589-5400
Facsimile:  (502) 581-1087
E-mail:  bgreenwald@fbtlaw.com
*Counsel for Crimson Aero Corporation*

LOULibrary TMP.TMP 841491v1